JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Theodore Dumas, appeals his convictions for carrying a concealed weapon, assault on a peace officer, and resisting arrest. We affirm.
 {¶ 2} Appellant was indicted in July 2006, in a five-count indictment. Counts one and two charged felonious assault (victim, Rodney Whiting), and each count had one-and three-year firearm specifications; count three charged carrying a concealed weapon; count four charged assault on a peace officer (victim, Officer Patrick Bishop); and count five charged resisting arrest.
 {¶ 3} Appellant filed a motion to suppress, seeking suppression of oral statements he made at the hospital on May 1, 2006; he did not challenge the arrest, search, or seizure of any other evidence. After a hearing, the motion was denied.
 {¶ 4} Appellant waived his right to a jury trial, and the case proceeded as a bench trial. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal as to all the counts, which was denied. The defense presented two witnesses on its behalf, and renewed its Crim.R. 29 motion for acquittal after resting its case. The motion was again denied.
 {¶ 5} The court found appellant not guilty of counts one and two, felonious assault, and guilty of the remaining counts (i.e., carrying a concealed weapon, assault on a peace officer and resisting arrest). Appellant was sentenced to one year on count three, carrying a concealed weapon, and one year on count four, *Page 4 
assault on a peace officer; the sentences were ordered to be served consecutively. Appellant was further sentenced to 90 days on count five, resisting arrest, to be served concurrently with counts three and four.
 {¶ 6} At trial, the named victim of the felonious assault charges, Rodney Whiting, testified that he was shot in the chest by appellant on May 1, 2006. Cepeda Hobbs testified that he was present when Whiting was shot. According to Hobbs, two other people, "Eddie" and "Roger," were also present. Hobbs testified that appellant was "playing" with a gun and did not mean to shoot Whiting. He described that after EMS personnel arrived and were outside attending to Whiting, a large group of people gathered, of which appellant was a part. Appellant, however, did not identify himself as the shooter. Hobbs identified the gun that the police found on appellant later that day as the gun appellant used to shoot Whiting.
 {¶ 7} Officers Ray Kaloczi and Lynn Bilko testified that they were the first officers to arrive on the scene. The officers testified that when they arrived, Whiting was in the ambulance. Kaloczi asked Whiting who shot him, but because of his injuries, Whiting was unable to respond. Kaloczi and Bilko interviewed two individuals who identified themselves as "Roger Williams" and "Eddie Addison;" neither indicated who the shooter was or whether he was still on the scene.
 {¶ 8} After Whiting was transported to the hospital, Kaloczi and Bilko went to the hospital to attempt to talk to him. Because of his injuries, however, Whiting was *Page 5 
still unable to speak. The officers did interview Hobbs at the hospital, who identified appellant as the suspect.
 {¶ 9} Several law enforcement officials, Sergeant Vincent Mamone and Officers Joseph Rutkowski, Eugina Gray and Jonathan Moran, were informed by Kaloczi and Bilko of appellant's name, address, and physical description. While on patrol, the police saw appellant walking toward his house and entering the front gate to the property. They asked appellant to stop, but he ran toward the house. Bishop approached appellant first and ordered him to stop. The officer attempted to pull appellant away from the house and toward where the other officers were, and in attempting to do so, he and appellant fell down.
 {¶ 10} A struggle ensued while the police attempted to handcuff appellant. Officer Gray twice advised appellant that she would have to taser him if he continued to refuse to cooperate. Appellant did not stop struggling, but continued to move his hands toward his waist area and tried to push up and run from the police. The police eventually tasered him several times and had to use two sets of handcuffs on him. Appellant was subsequently searched incident to arrest, and a revolver was recovered from his right front pants pocket. Lead Detective Leroy Gilbert testified that the gun recovered from appellant was an operable firearm. Officer Bishop's hand was broken during the struggle.
 {¶ 11} Appellant and Bishop were transported to the hospital. At the hospital, Gray heard appellant say that he "just wanted to go to jail and get this over with," *Page 6 
and that the victim "was pointing the gun at him and pulling the trigger," so appellant "got the gun and pointed it at [Whiting] and pulled the trigger and the gun went off."
 {¶ 12} Appellant presented two witnesses. Roger Patrick, who admitted that he identified himself to the police as "Roger Williams," testified that he saw appellant try to empty the bullets from the gun before he "played" with it. He further testified that although he told the police at the scene that he did not know who the shooter was, he was present when appellant shot Whiting and told him to run home before the police arrived. Torrance Lyde also testified that he told appellant to leave the scene of the shooting before the police arrived. Lyde further testified that he saw a man, known to him as only "Gunner," in the neighborhood later that day with the gun. Lyde was unable to explain, however, how appellant got the same gun back before he was arrested.
 {¶ 13} Appellant raises five assignments of error for our review. For ease of discussion, some of the assignments are considered out of order.
 {¶ 14} In his first assignment of error, appellant contends that the evidence was insufficient to sustain the assault on a peace officer conviction. We disagree.
 {¶ 15} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt *Page 7 
beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citing State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. "Sufficiency is a test of adequacy." State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 16} Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Jenks, supra. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 17} R.C. 2903.13, governing assault on a peace officer, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."
 {¶ 18} Appellant argues that the evidence was insufficient to support the assault on a peace officer conviction because the victim, Officer Bishop, did not testify at trial and the State did not produce his medical records to corroborate his injuries.
 {¶ 19} Sergeant Mamone and Officers Rutkowski, Moran and Gray all testified that appellant ran away from them when they arrived at his house and failed to comply with Officer Bishop's commands. When Officer Bishop grabbed appellant, *Page 8 
appellant resisted and they both fell to the ground, where appellant continued to resist. In fact, appellant had to be tasered several times and two sets of handcuffs had to be used to restrain him. The officers further testified that based on the scuffle with appellant, Officer Bishop was injured and received medical treatment for a broken hand. Based on this testimony, viewed in a light most favorable to the State, appellant's conviction for assault on a peace officer was supported by sufficient evidence. The first assignment of error is overruled.
 {¶ 20} In his third assignment of error, appellant contends that he was denied due process because his resisting arrest conviction was based on an unlawful arrest.
 {¶ 21} The Fourth Appellate District has stated the following in regard to an arrest underlying a resisting arrest charge:
 {¶ 22} "R.C. 2921.33(A) provides that, `No person, recklessly or by force, shall resist or interfere with the lawful arrest of the person or another.' A lawful arrest' is an element of the offense of resisting arrest, and the prosecution must prove beyond a reasonable doubt that the arrest allegedly resisted was lawful. See id.; State v. Raines
(1997), 124 Ohio App.3d 430, 706 N.E.2d 414; State v. Thompson (1996),116 Ohio App.3d 740, 689 N.E.2d 86; State v. Alley (Apr. 28, 1999), Pike App. No. 97CA603, 1999 Ohio App. LEXIS 2007. In order to show a lawful arrest' the state must prove not only that there was a reasonable basis to believe an offense was committed, but also that the offense was one for which the defendant could be *Page 9 
lawfully arrested. See id.; State v. Maynard (1996),110 Ohio App.3d 6, 10, 673 N.E.2d 603 (holding that in order to prove a `lawful arrest,' there must be `probable cause by the evidence of reasonable grounds for the arrest.'). However, the state need not prove beyond a reasonable doubt the elements of the underlying offense for which the arrest was originally being made. See id.; see, also, Warren v. Patrone (1991),75 Ohio App.3d 595, 600 N.E.2d 344 (holding that a defendant is not required to be convicted of the charge for which he was arrested in order to be convicted of resisting arrest)." State v. Gilchrist, Athens App. No. 02CA26, 2003-Ohio-2601.
 {¶ 23} Appellant contends that the arrest was unlawful because the police did not have an arrest warrant and he was not even a named suspect in the police report. We disagree.
 {¶ 24} Probable cause to arrest is a requirement of theFourth Amendment to the United States Constitution binding upon the individual states through the Fourteenth Amendment. Giordenello v.United States (1958), 357 U.S. 480, 78 S.C.t 1245, 2 L.Ed.2d 1503. Probable cause exists where the facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280,69 L.Ed. 543; Henry v. United States (1959), 361 U.S. 98, 80 S.Ct. 168,4 L.Ed.2d 134; Ker v. California (1963), 374 U.S. 23, *Page 10 83 S.Ct. 1623, 10 L.Ed.2d 726; Beck v. Ohio (1964), 379 U.S. 89,85 S.Ct. 223, 13 L.Ed.2d 142; State v. Fultz (1968), 13 Ohio St.2d,234 N.E.2d 593.
 {¶ 25} This court must therefore determine "whether the facts available at the moment of the arrest would `warrant a man of reasonable caution in the belief that an offense has been committed." Beck v.Ohio, supra at 96, quoting Carroll v. United States, supra at 162. On this point, Officer Kaloczi testified that the police were "99 percent sure that [appellant] was who the shooter was, but because the witness [i.e., Hobbs] was not 100 percent sure of his name, [we did] not make him a named suspect. We thought it best to have the detective bureau follow up and then do a full array or something and get a warrant out for his arrest."
 {¶ 26} While the police were patrolling, however, they saw appellant walking toward his house and entering the front gate to his property. They asked him to stop, but he ran toward the house. We find that these facts bolstered the police's suspicions and constituted probable cause, giving rise to a lawful arrest.
 {¶ 27} Appellant's third assignment of error is overruled.
 {¶ 28} Appellant contends in his second and fourth assignments of error that his convictions for assault on a peace officer and resisting arrest, respectively, were against the manifest weight of the evidence.
 {¶ 29} A challenge based on the manifest weight of the evidence questions whether the State has met its burden of persuasion.Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the *Page 11 
evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340,515 N.E.2d 1009.
 {¶ 30} As previously mentioned, R.C. 2903.13 governing assault on a peace officer provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2921.33(A) governing resisting arrest provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."
 {¶ 31} Appellant makes the same arguments relative to his assault on a peace officer conviction as he made in the first assignment of error, and the same arguments relative to his resisting arrest conviction as he made in the third assignment of error. For the reasons already discussed, we find those arguments to be without merit and therefore overrule the second and fourth assignments of error.
 {¶ 32} Appellant contends in his fifth and final assignment of error that his carrying a concealed weapon conviction violated his due process rights because the weapon was discovered during an unlawful arrest.
 {¶ 33} Appellant failed to raise this issue in his motion to suppress. As previously mentioned, the only issue raised in his suppression motion related to the *Page 12 
oral statements appellant made at the hospital. Appellant never attempted to suppress the gun seized from him and, therefore, has waived the issue on appeal. "[T]he defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. * * * Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." State v. Peagler, 76 Ohio St.3d 496, 500,1996-Ohio-73, 668 N.E.2d 489.
 {¶ 34} Regardless of appellant's failure to preserve the issue for review, as already discussed, there was probable cause to arrest appellant and, therefore, the police properly searched him incident to arrest. See State v. Hobbs, Cuyahoga App. No. 85889, 2005-Ohio-3856. Accordingly, appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, P.J., and MARY J. BOYLE, J., CONCUR *Page 1