**The STATE of Ohio, Appellant,**

**v.**

**BUSH, Appellee.**

[Cite as *State v. Bush* (1989), 65 Ohio App.3d 560.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57437.

Decided Dec. 11, 1989.

*John T. Corrigan,* Prosecuting Attorney, and *Thomas Conway,* Assistant Prosecuting Attorney, for appellant.

*Sanford I. Atkin,* for appellee.

*Per Curiam.*

Defendant Vernon M. Bush was indicted by the Cuyahoga County Grand Jury on three counts, *viz.,* two counts of trafficking in drugs in violation of R.C. 2925.03 and 2925.13, and one count of possession of criminal tools in violation of R.C. 2923.24.

Defendant Bush filed a motion to suppress all evidence obtained incident to his arrest. After a hearing on March 21, 1989, the trial court journalized an order granting defendant's motion to suppress. The state filed a timely notice of appeal.

The relevant facts adduced at the suppression hearing follow:

Defendant Bush was driving his automobile in Cleveland Heights. He was stopped by Sergeant Mark Lovquist of the Cleveland Heights Police Department for allegedly having a cracked windshield and no county registration sticker on his license plate. Officer Lovquist asked the defendant for his driver's license. Defendant did not produce his driver's license. Defendant identified himself as Mark T. Green and provided a Social Security number. Officer Lovquist attempted by computer to verify this information and discov-

ered a discrepancy between the height and weight of Mark Green and defendant. The officer then checked defendant's address with Mark Green's address. This also was inconsistent. Finally, the license plates on the automobile were registered to a female.

Based upon all of these factors, Officer Lovquist arrested the defendant. Defendant was handcuffed and taken to the police station. Defendant stated he was first patted down. The police testified that the usual arrest procedure includes a pat down for hand weapons.

At the police station as part of an inventory search defendant was required to empty his pockets and turn the contents over to the booking officer, Sergeant Patrick Morris. The police determined that defendant would be held until bail was arranged. Sergeant Morris testified arranging for bail was only a matter of preparing the papers, since defendant had on his person, *inter alia*, $1,884.68 in cash, a sufficient amount of money to post bond.

Prior to placing defendant in a cell and incident to defendant's arrest, he was searched by Sergeant Morris. Sergeant Morris felt objects in the groin area of the defendant's clothing. Although the objects were soft and did not feel like a weapon according to Sergeant Morris, he had the defendant pull down his pants and his underpants. Two valid identification cards and two one-ounce packages of cocaine were found inside the defendant's underwear.

The state assigns the following error:

"The trial court erred when it incorrectly suppressed evidence properly obtained through a search incident to arrest."

The state's assignment of error has merit.

The state contends that the Cleveland Heights Police acted properly at all times. The state also contends that at no time were the defendant's Fourth Amendment rights violated. The state's arguments are persuasive.

"[A] full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that amendment.

"The court elaborated that the full custodial search was not limited—as in the case of a stop-and-frisk search incident to an investigative stop based on less than probable cause to arrest—to conducting a frisk of outer clothing only, and removing such weapons an officer may reasonably believe a suspect has in his possession, even though the arrest was for a traffic violation. Rather, since a custodial arrest based upon probable cause is a reasonable intrusion under the Fourth Amendment, the authority to search, based upon the need to disarm and discover evidence, does not depend on what a court might later decide was the possibility in a particular arrest situation that

weapons or evidence would, in fact, be found on the person. The court stated further that the Fourth Amendment was not violated by the search in that case notwithstanding the fact that the officer had no reason to suspect that the defendant was armed and no further evidence of the crime in question could have been obtained by a search." *State v. Mathews* (1976), 46 Ohio St.2d 72, 74, 75 O.O.2d 150, 151, 346 N.E.2d 151, 152, citing *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.

In the case *sub judice*, defendant was arrested and taken to the police station. Defendant was to be held until bond could be arranged. The police conducted an inventory search of defendant incident to his arrest.[1] As part of the search defendant was patted down by Officer Morris. Officer Morris felt objects in the groin of the defendant's clothing. Since the objects were not turned over as part of the inventory search, Officer Morris needed to determine the nature of these suspicious objects. From the transcript it can be gleaned the inventory search began at the booking counter. However, defendant was then "removed from the counter to an interview room down the hall due to the fact there were female juveniles in the immediate area." The inventory search continued in the interview room when Officer Morris had defendant pull down his trousers and underpants uncovering the cocaine and identification cards.

Since defendant was given the opportunity to reveal objects as part of the inventory search but failed to do so, it was not unreasonable for Officer Morris to strip search defendant under the circumstances. The search was conducted prior to defendant's being placed in a holding cell where defendant could have ingested the cocaine or sold it to another also being held. The police are not required to turn their backs and permit crimes to be perpetrated in the police station. This search was clearly reasonable under the circumstances and therefore valid under the Fourth Amendment. As the Supreme Court has held: "At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Illinois v. Lafayette* (1983), 462 U.S. 640, 646, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65, 71. This may include taking a prisoner's clothing. *United States v. Edwards* (1974), 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771.

---

**1.** A range of governmental interests support an inventory search. These interests include protecting the police from false claims of theft and danger. A search also protects the prisoner from police theft as well as danger to himself or other prisoners. See *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65.

Defendant also contends that the strip search conducted by the Cleveland Heights Police violated R.C. 2933.32. However, R.C. 2933.32(B)(2) provides as follows:

"A strip search may be conducted if a law enforcement officer * * * has probable cause to believe that the person is concealing evidence of the commission of a criminal offense * * * that could not otherwise be discovered."

In the case *sub judice*, Officer Morris felt objects in defendant's groin. These objects were not turned over to the police during the booking process; therefore, Officer Morris was provided with probable cause that defendant was concealing evidence. He thus acted within the statute in having defendant pull down his trousers.

Accordingly, the state's sole assignment of error is well taken and should be granted.

*Judgment reversed.*

KRUPANSKY, P.J., JOHN F. CORRIGAN and STILLMAN, JJ., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.